UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED
2005 APR -7 P 3: 59
U.S. DIST. COURT CLERK
EAST. DIST. MICHIGAN
DETROIT

JIMMIE L. BRADLEY,

    Plaintiff

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

Civil Action No. 04-72326

HON. BERNARD A. FRIEDMAN
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Jimmie L. Bradley brings this action pursuant to 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for disability and disability insurance benefits under Title II and Title XVIII of the Social Security Act, 42 U.S.C. §§ 416(i), 423 (Tr. 45-48). Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment be DENIED.

## **PROCEDURAL HISTORY**

On May 24, 2002, Plaintiff filed an application for Disability Insurance Benefits (DIB) alleging an onset of disability date of August 30, 2001 (Tr. 45-48). After denial of his initial claim, Plaintiff filed a timely request for an administrative hearing, conducted on October 21, 2003 in Oak Park, Michigan before Administrative Law Judge (ALJ) Henry Perez Jr. (Tr. 23). Plaintiff, represented by attorney Donald Shiffman, testified. (Tr. 113-123). Raymond Dulecki, acting as Vocational Expert (VE) also testified (Tr. 123-128). ALJ Perez found that although Plaintiff was unable to perform any of his past work, he retained the capacity to perform a significant range of light work found in significant numbers in the national economy (Tr. 23). On May 20, 2004 the Appeals Council denied review (Tr. 4-7). Plaintiff filed for judicial review of the final decision on July 15, 2004.

## **BACKGROUND FACTS**

Plaintiff, born June 12, 1949, was age fifty-four when the ALJ issued his decision (Tr. 45). A high school graduate with two associates degrees, Plaintiff previously worked as an adult foster care provider, juvenile transportation driver, and child care worker (Tr. 18, 113). Plaintiff alleges an onset date of August 30, 2001 when complications following a March, 1999 work related injury obliged him to undergo a total left knee arthroplasty (Tr. 19).

A.  **Plaintiff's Testimony**

On October 21, 2003, Plaintiff testified before ALJ Perez that he last worked in August, 2001 when severe left knee pain forced him to discontinue work (Tr. 115). He reported that since a work related injury to his left knee in March 1999, he experienced severe swelling and knee pain (Tr. 115). He stated that his physician performed arthroscopic surgery in the summer of 1999, and that he underwent a total knee replacement in the autumn of 2001 (Tr. 115-116). He indicated that subsequent to his 2001 surgery he treated with a physician specializing in circulation problems (Tr. 116). Plaintiff reported that because of pain and circulation problems he could not walk for more than a block without needing to stop and massage his feet and toes (Tr. 116-117). He testified that after sitting for half an hour he would experience leg numbness and estimated that he could not stand for more than twelve to fifteen minutes without discomfort (Tr. 117). He testified that he relieved his discomfort by sitting with his feet elevated (Tr. 117-118). He estimated that he sat with his feet elevated for anywhere between half an hour to two hours at a time approximately five to seven times a day (Tr. 118). He indicated that he slept poorly due to shooting leg pains, which he described as "being stuck by a needle" (Tr. 119).

Plaintiff reported that he could not enjoy any recreational activities or drive for extended distances because of his leg problem (Tr. 120-121). He indicated that he took Ultraset for pain and Blutol for circulation (Tr. 120). He reported that Ultraset

sometimes gave him an upset stomach, but otherwise, neither medication caused side effects (Tr. 120-121). Plaintiff estimated that he could lift fifty pounds occasionally and "wouldn't have a whole lot of problems" with lifting twenty pounds (Tr. 123). Nonetheless, Plaintiff opined that he would be unable to work on a regular basis due to his need to elevate his left leg (Tr. 121).

### B.    Medical Evidence

In May, 1999, Mitchell Z. Pollak, M.D., noted that Plaintiff had been tackled by a patient in March, 1999, resulting in left knee swelling and pain (Tr. 80). He stated that x-rays taken of Plaintiff's left knee showed advanced degenerative arthritic changes and "a large calcification . . . [was] noted in the posterior aspect of the knee" (Tr. 80). Dr. Pollak indicated that Plaintiff received cortisone injections for swelling (Tr. 81). In July, 1999, Plaintiff underwent out-patient arthroscopic irrigation/debridement of his knee after continuing to experience swelling and discomfort (Tr. 83-83). Plaintiff related to Dr. Pollack at a follow-up appointment that his pain and swelling had decreased (Tr. 86). At an October, 1999, examination, Plaintiff related that he had gone back to work and was working overtime (Tr. 87). Notes form his next appointment in August, 2001 indicate that he was again experiencing pain and swelling (Tr. 88). In September, 2001, Plaintiff agreed to undergo total knee arthroplasty (Tr. 88). Two months after Plaintiff's September 21, 2001 surgery, Dr. Pollack reported that he had an excellent range of motion (Tr. 89).

Notes from a December, 2001 exam indicate that Plaintiff took Motrin for pain and planned to return to work the next month (Tr. 90).

Plaintiff treated with William S. Gross M.D. following his September 2001 surgery (Tr. 91-97). In January, 2002, Dr. Gross, a vascular specialist, remarked that Plaintiff could not perform his job duties and advised him to give up his habit of smoking a half pack of cigarettes everyday (Tr. 95-97). A January, 2002 test result showed a moderate area of stenosis and diminished ABI consistent with some arterial insufficiency (Tr. 101). In a March, 2003 report, Dr. Gross reported that imaging tests showed mild peripheral vascular disease of the right lower extremity and severe peripheral vascular disease of the left lower extremity (Tr. 100).

### C.     Vocational Expert Testimony

VE Raymond Dulecki, indicating that Plaintiff, fifty-four was approaching advanced age, classified Plaintiff's former work as skilled at the heavy exertional level (Tr. 125). He stated that Plaintiff, who worked with juveniles with medical and psychiatric difficulties had transferable skills to light work (Tr. 125). He testified that Plaintiff could still perform paraprofessional activities in the transportation field, stating that 2,200 of such jobs existed in Southeast Michigan (Tr. 126). The ALJ then posed the following question to the VE:

> "Taking [Plaintiff's] age, education, and work experience into account, assume that such a person has no exertional limitation of lifting established, and we impose limitations of a job that would provide for sitting six hours, standing/walking two hours, with the option to sit or stand; also, for walking,

he would be allowed the use of a cane for walking long distances; be moderately limited in pushing and pulling with the left lower extremity; no climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; no kneeling or crawling; occasional balancing, stooping, and crouching; and jobs that would not require fine visual acuity of the right eye. And if we put this individual at the skilled level, could such a person be expected to perform [Plaintiff's] past relevant work ?" (Tr. 126)

The VE answered that given the above limitations, such an individual could not perform Plaintiff's past relevant work (Tr. 126). The VE stated further that Plaintiff's limitation disallowed the application of transferrable skills (listed above) (Tr. 126). However, the VE found that Plaintiff could perform work at the light exertional level, stating that he could perform work in the areas of inspecting, packaging and assembly operations (Tr. 127). The VE reported that approximately 12,000 such jobs existed in Southeast Michigan (Tr. 127). Assuming that Plaintiff's claimed exertional limitations were credible, the VE testified that Plaintiff could perform all of the above work (Tr. 127). However, the VE indicated that if Plaintiff's allegations of non-exertional limitations were included, his need keep his feet elevated for several hours a day would preclude gainful employment (Tr. 128). The VE stated that his testimony was consistent with the Dictionary of Occupational Titles, with the exception of his testimony pertaining to Plaintiff's alleged need to elevate his leg, which was based on his own experience (Tr. 128).[1]

---

[1] The VE stated that the DOT does not specifically address the Plaintiff's alleged need to keep his leg elevated ( Tr. 128).

### D.     The ALJ's Decision

Based on Plaintiff's June 1, 2002 application, ALJ Perez held that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 23). Citing Plaintiff's medical records, the ALJ found that Plaintiff suffered from the severe impairment of "status post left knee replacement " (Tr. 19). The ALJ held that Plaintiff's impairment was considered severe based on the requirements of the regulation, but found nonetheless that it did not meet or medically equal one of the impairments found in Appendix 1 Subpart P, Regulations No. 4 (Tr. 19-20).

The ALJ found that while Plaintiff was unable to perform his past work, he retained the residual functional capacity (RFC) to perform "a significant range of light work, subject to the following limitations:

> "a sit/stand option and the ability to use a cane for walking long distances. The job may only require standing for up to 2 hours in an 8-hour workday, walking up to 2 hours in an 8-hour workday. The job cannot require climbing ropes or scaffolds, kneeling, crawling or fine visual acuity with the right eye and cannot require more than occasional climbing steps or ramps, balancing, stooping or crouching" (Tr. 20).

He concluded although Plaintiff's exertional limitations do not allow him to perform a full range of light work, Plaintiff could perform a significant number of jobs in the national economy, citing inspector jobs, packager jobs and assembly jobs, finding the occurrence of approximately 12,000 of such jobs in the regional economy and 24,000 in the State of Michigan (Tr. 21).

The ALJ found Plaintiff's allegations of limitations "partially credible" (Tr.

20). The ALJ found Plaintiff's claim that he was required to keep his legs elevated during the day unsubstantiated by the record (Tr. 20).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

**A.   Credibility**[2]

---

[2]The Court addresses Plaintiff's arguments for reversal out of the order listed in *Plaintiff's Brief. See Id.* at 1. Because the ALJ's residual functional capacity is based partly on the ALJ's assessment of Plaintiff's credibility, the Court should first analyze the propriety of the credibility determination.

Plaintiff argues that the ALJ's credibility determination, which rejected his claim that his condition obliged him to keep his legs elevated above waist level, is unsupported by substantial evidence. *Plaintiff's Brief* at 8 *referencing* (Tr. 20). Plaintiff cites *Blankenship v. Bowen,* 874 F 2d 1116 (6th Cir. 1989) to support his argument that the ALJ's credibility determination requires a remand for benefits. *Id.* Plaintiff also cites *Beavers v. Secretary of HEW,* 577 F2d 383 (6th Cir. 1978) and *Harris v. Heckler,* 756 F2d 431 (6th Cir. 1985), contending that the ALJ's failure to identify the reasons for rejecting his credibility mandate reversal. *Id.* Finally, Plaintiff cites Social Security Ruling (SSR) 96-7 which requires an administrative decision to contain "sufficiently specific" credibility findings.

SSR 96-7p states in part, "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment . . .that can be shown by medically acceptable clinical and laboratory absence techniques . . . ." *Id.* Second, SSR 96-7p mandates that

> once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limited effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. *Id.*

Contrary to Plaintiff's argument that the ALJ's decision did not list a reason

to support his credibility determination, the ALJ stated that Plaintiff's claim that he needed to keep his legs elevated several hours a day were "unsubstantiated by the record" (Tr. 20). The second prong of SSR96-7, (above) indicates that in the absence of any evidence supporting Plaintiff's alleged limitation, the ALJ must make a credibility determination based on the entire record. ALJ Perez, noting the dearth of objective medical evidence supporting Plaintiff's claim, based his credibility determination upon his observation that none of his health care providers supported the degree of limitation he alleged.[3] Further, the ALJ is not obliged to include all allegations of pain and limitation that he finds not credible. "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994), *quoting Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

In addition, it is Plaintiff who bears the burden of proof in substantiating his claimed limitations. *See Duncan v. Secretary,* 801 F.2d 847, 853 (6th Cir.1986); *McCormick v. Secretary,* 861 F.2d 998, 1002-1003 (6th Cir.1988). *See also, Hurst v.*

---

[3]Plaintiff's brief transcript of one hundred twenty-nine pages does not contain a Daily Activities Form or any assessment of his limitations by a government physician which are two common inclusions in such records. While the ALJ cites only one reason for rejecting Plaintiff's alleged limitations, given the fairly limited record from which he must draw, I find his single reason sufficient to properly reject portions of Plaintiff's testimony.

*Secretary,* 753 F.2d 517, 519 (6th Cir.1985) (limitations must be substantiated by some objective, clinical or laboratory findings.) Thus the ALJ's decision to reject a portion of Plaintiff's unsubstantiated allegations should be upheld.

### B. Residual Functional Capacity for Light Work

Plaintiff also argues that the ALJ erred in finding that he could perform light work, maintaining that his impairments limit him to sedentary work only. Plaintiff, fifty-four, notes his age and lack of transferable skills direct a conclusion of disabled.[4]

*Plaintiff's Brief* at 8.

"Light work," as defined by the Social Security Administration

> "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

*Wackerle v. Commissioner of Social Security* 2004 WL 1765474, 3 (E.D.Mich.2004);

---

[4] 20 CFR § 404.1563 (d) states, "If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." A finding that a claimant closely approaching advanced age with skills analogous to Plaintiff's could perform only sedentary work would generally direct a finding of disabled." "The 'grid,' Pt. 404, Subpt. P, App. 2, directs a finding of disabled if plaintiff had a residual functional capacity (RFC) for sedentary work, § 201.09, but not if his RFC is light, § 202.10." *Davis v. Secretary of Health and Human Services* 634 F.Supp. 174, 177 (E.D.Mich.,1986)

20 C.F.R. § 404.1567(b).

Contrary to Plaintiff's assertions, substantial evidence supports the ALJ's finding that Plaintiff could perform a limited range of light work. First, as pointed out by Defendant, none of Plaintiff's physicians described functional limitations greater than those employed by the ALJ in his RFC. *Defendant's Brief* at 6. Second, for the reasons cited above in Section A., the ALJ, noting the absence of supporting documentation, properly rejected Plaintiff's alleged degree of limitation.

In addition, the ALJ, using an RFC which employed limitations supported by substantial evidence, found that Plaintiff could not perform work that included climbing ropes or scaffolds; kneeling; or crawling; limiting Plaintiff to only occasional climbing steps or ramps; balancing; stooping or crouching; and walking for up to two hours a day. Therefore, the ALJ properly found that Plaintiff could perform a *limited* range of light work (Tr. 20). Contrary to Plaintiff's claim, his inability to perform a *full* range of light work does not mandate a finding that he could perform only sedentary work. See *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003) ( rejecting the plaintiff's argument that because she was incapable of doing all of the jobs in the light work category, that she should have been dropped to a sedentary work category.) Moreover, when a claimant's limitations prevent him from standing or sitting for extended periods, SSR 83-12, 1983 WL 31253, 4 provides that

> "In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work

except that the person must alternate periods of sitting and standing . . . Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base."

The ALJ, following the strictures of SSR 83-12, asked the VE if Plaintiff could perform light work given the limitations he found credible, including a sit/stand option (Tr. 126). VE's testimony, which concluded that Plaintiff could perform a limited range of light work, included jobs as an inspector, packager, or assembly operator (Tr. 127). Plaintiff's testimony that he could lift fifty pounds occasionally if he shifted his weight off his left leg and onto his right leg and his admission that he would not experience difficulty lifting twenty pounds occasionally also supports the ALJ's RFC.[5] Contrary to Plaintiff's contention, I find that substantial evidence supports the RFC and further, that the ALJ comported with the procedural requirements necessary to conclude that Plaintiff could perform a limited range of light work.

Plaintiff, who nearly completed his Bachelors degree, spent much of his life using his work skills (sometimes on a voluntary basis) to perform difficult jobs for some of society's most vulnerable individuals (Tr. 125). Plaintiff's present medical

---

[5]Plaintiff qualified his statement that he could lift fifty pounds occasionally if he shifted his weight by adding later that he did not think he could perform such lifting occasionally on an *eight-hour basis* (Tr. 123). However, his statement that he could lift twenty pounds occasionally was not similarly conditioned (Tr. 123).

condition is a result of such work. This Court notes in closing that its conclusion upholding the ALJ's finding of non-disability is not intended to trivialize Plaintiff's legitimate impairments. However, based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen, supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

R. STEVEN WHALEN
United States Magistrate Judge

Dated: April 7, 2005

## CERTIFICATION OF SERVICE

I, the undersigned, hereby certify that I have on the 7th day of April, 2005, mailed copies of the attached REPORT AND RECOMMENDATION to the following parties:

**KENNETH LARITZ, ESQ.**
**15501 METROPOLITAN PARKWAY**
**SUITE 100**
**CLINTON TOWNSHIP, MI 48036**

JAMES A. BRUNSON
ASSISTANT U.S. ATTORNEY
101 FIRST STREET
SUITE 200
BAY CITY, MI 48708-5747

SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE REGIONAL COUNSEL
200 WEST ADAMS
30TH FLOOR
CHICAGO, IL 60606

G. K. Wilson, Judicial Assistant
Magistrate Judge R. Steven Whalen